## Wilner v. Lewis, Secretary of Commonwealth, et al.

Joseph J. Kintner and Scott S. Leiby, for plaintiff.

William A. Schnader, Special Deputy Attorney-General, and Cyrus E. Woods, Attorney-General, for defendants.

Fox, J.—The plaintiff presented and filed his bill, whereupon a rule was granted on the defendants to show cause why a preliminary injunction should not be issued as prayed for in the bill. An answer raising preliminary objections to the bill was filed, and on Aug. 27th argument was heard by the court in banc.

At the argument the plaintiff moved to amend his bill, which was allowed. The substance of the bill as amended is that the plaintiff is a citizen, resident, qualified elector and taxpayer of Cambria County; that the defendant, Frank P. Barnhart, who resides in the said County of Cambria, on July 26, 1929, filed a nomination petition in the office of the Secretary of the Commonwealth to cause his name to be certified as a candidate for the nomination by the electors of the Republican Party of the 47th Judicial District of Pennsylvania for the office of judge of the Court of Common Pleas of said district to be voted for at the forthcoming primary election to be held on Sept. 17, 1929, which official shall be elected at the election to be held on Nov. 5, 1929; that the said Frank P. Barnhart attached to the said petition, now on file in the office of the Secretary of the Commonwealth, an affidavit, wherein he averred that he, the said candidate, is eligible to the said office; that the said Frank P. Barnhart is not eligible to the said office for the reason that he was convicted of the crime of forgery in the Court of Quarter Sessions of Cambria County on Feb. 19, 1919, to No. 74, December Sessions, 1918, and that sentence or judgment of the court was pronounced; no appeal was taken therefrom and no pardon has been applied for or granted; that under article II, section 7, of the Constitution of the Commonwealth of Pennsylvania, which section provides as follows, "No person hereafter convicted of embezzlement of public moneys, bribery, perjury, or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Common-

wealth," forgery being an infamous crime and the office of judge of the Court of Common Pleas of Cambria County being one of trust or profit, therefore, he is incapable of holding the said office of judge; that a great and irreparable injury will be suffered by and done to the plaintiff as well as all the other people of the said judicial district unless relief is given by enjoining the Secretary of the Commonwealth from certifying the said name of Frank P. Barnhart as a candidate for judge of the Court of Common Pleas of Cambria County that it may appear upon the ballot to be used by the electors at the forthcoming primary election of the said judicial district; the prayer being that a preliminary injunction issue, to be made permanent upon final hearing, restraining the Secretary of the Commonwealth and his deputies from certifying to the County Commissioners of Cambria County the name of Frank P. Barnhart as a candidate for the office of judge of the Court of Common Pleas of Cambria County, the 47th Judicial District, so that his name cannot be printed on the ballot to be used at the primary election on Sept. 17, 1929, nor on the ballot of the general election to be held on Nov. 5, 1929; that the nomination petition of the said Frank P. Barnhart be refused and set aside; that a decree be entered after full hearing, declaring that the said Frank P. Barnhart is ineligible, incapable and disqualified to hold the office of judge of the Court of Common Pleas of the 47th Judicial District.

The preliminary objections to the bill are as follows:

"1. The bill does not aver any such special interest in the plaintiff as would entitle him to ask for equitable relief, nor that the plaintiff is a taxpayer, nor any other grounds which would enable him to institute these proceedings.

"2. A nomination petition can be refused or set aside only for the reasons specifically set forth in section 8 of the Act of July 12, 1913, P. L. 719; and the bill of complaint does not set forth any of said reasons.

"3. Eligibility to hold office is not a prerequisite to nomination for office; and even if the defendant, Frank P. Barnhart, were ineligible to hold the office of judge of the Court of Common Pleas of Cambria County, your honorable court would not have jurisdiction to enjoin the defendant, Robert R. Lewis, Secretary of the Commonwealth, from certifying his name to the County Commissioners of Cambria County as a candidate for said office. Defendants deny, however, that Frank P. Barnhart is ineligible to hold said office.

"4. The bill on its face shows that the nomination petition of said Frank P. Barnhart has already been filed. It is, therefore, too late to refuse it. And a nomination petition can be set aside only under the procedure set forth in the Act of July 12, 1913, P. L. 719, its amendments and supplements. Under said legislation, your honorable court does not have jurisdiction in equity to set aside a nomination petition, as said legislation provides an adequate and exclusive remedy at law for this purpose.

"5. Your honorable court has judicial notice of the fact that said Frank P. Barnhart is now holding office as judge of the Court of Common Pleas of Cambria County. The only procedure under which his right to hold said office may be challenged is by writ of quo warranto. The present bill is an effort to try the title of said Frank P. Barnhart to his office by another and different procedure.

"6. Your honorable court does not have jurisdiction to enter a decree declaring said Frank P. Barnhart ineligible, incapable and disqualified to hold the office of judge of the Court of Common Pleas of the 47th Judicial District, exclusive jurisdiction for this purpose being vested in the Supreme Court of Pennsylvania under the Constitution of Pennsylvania.

"7. For the reasons hereinbefore stated, your honorable court does not have jurisdiction to grant any of the relief prayed for in the bill.

"8. If the plaintiff had such an interest as to entitle him to maintain proceedings in the premises, he would have an adequate remedy at law by an application to the Attorney-General of the Commonwealth of Pennsylvania for the institution of *quo warranto* proceedings. That plaintiff is fully aware of this remedy appears by reference to the petition in the case of Com. ex rel. Joseph A. Wilner, Julius Wilner and Edwin K. Kintner *v.* Cyrus E. Woods, Attorney-General, No. 26, Commonwealth Docket, 1929, filed on behalf of the plaintiff and others in your honorable court concurrently with the filing of the bill of complaint in this case."

Immediately preceding the argument, a motion was made by the plaintiff to dismiss the preliminary objections, which motion is hereby overruled.

By the amendment of the bill, the first of the preliminary objections is eliminated.

The substance of the remaining preliminary objections goes to the jurisdiction of the court to grant equitable relief as prayed for and the capacity of the defendant, Frank P. Barnhart, to hold said office.

The Act of July 12, 1913, P. L. 719, by section 8, provides as follows:

"No nomination petition shall be refused or set aside except for—

"*(a)* Material error or defects apparent on the face thereof or on the face of the appended or accompanying affidavits; or

"*(b)* Material alterations made after signing, without the consent of the signers; or

"*(c)* Want of a sufficient number of genuine signatures of persons qualified, with respect to age, sex, residence and citizenship to be electors.

"The invalidity of any sheet of a petition shall not affect the validity of such petition, if a sufficient petition remains after eliminating such invalid sheet.

"Application to set aside any nomination petition shall be by petition to the Court of Common Pleas of the county in which such nomination petition has been filed, setting forth specifically the matters objected to, and must be filed within five days after the last day for filing said nomination petition. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing, which shall not be later than ten days after the last day for filing said nomination petition and specifying the time and manner of notice that shall be given to the candidate named in the nomination petition sought to be set aside."

We have a number of lower court decisions which in effect hold that the foregoing numbered section prescribes a definite and exclusive remedy to set aside nomination petitions and limits the grounds upon which the same may be done, but we find no positive appellate court decisions upon the subject. Our own court, by Kunkel, J., has rendered several opinions which we think are pertinent. In the case of Reid's Nomination, 26 Dist. R. 534, an objection was filed to the nomination petition of a candidate for mine inspector on the ground that the candidate was not a resident of the district in which the office was to be filled, and the court, *inter alia,* said: "The only objection urged upon us at the hearing goes to the qualification of the candidate for the office for which he was named. It may well be doubted if we have power in this proceeding to pass upon such a question." In Com. *v.* McAfee, 9 Dauphin Co. Reps. 183, the court said: "And this court has heretofore held that it is the duty of the officer to receive and file every certificate of nomination or nomination paper which is regular on its face, and that no authority is

given to him by this section to hear and determine controverted questions of fact or law: Jeffries *v.* Griest, 3 Dauphin Co. Reps. 228 (9 Dist. R. 683); Com. ex rel. Leonard *v.* Reeder, 3 Dauphin Co. Reps. 51 (5 Dist. R. 600).

"The return to the alternative writ of mandamus shows that the respondent refused to receive and file the present nomination paper because it contained a nomination for the office of senator for a senatorial district which he alleges does not exist. This is expressly deciding a question which he has no authority to decide. The reason which he gives for refusing to receive and file the paper does not appear upon the face of the paper, but depends upon matters outside of it. Such matters he is not authorized to consider. Upon objections that go to the validity of the nomination he may not pass. If, upon examination of the paper, it be found to be regular, it is his duty to receive and file it. This nomination is made on the blank furnished by the Secretary of the Commonwealth. It is not pointed out to us that the paper is deficient in anything the act of assembly requires. It is, therefore, entitled to be filed, and judgment is ordered to be entered in favor of the plaintiff."

In Abbott's Nomination, 1 D. & C. 600, the court held: "This proceeding is purely statutory, and our power to set aside a nomination paper is severely restricted to explicit statutory grounds, among which the only pertinent one is thus expressed in section 8 of the Act of July 12, 1913, P. L. 719, 730."

In Nicholson *v.* Earle, 20 Dist. R. 781, Sulzberger, P. J., said:

"This is a bill in equity praying for a perpetual injunction to restrain the county commissioners from printing or causing to be printed the name of George H. Earle, Jr., as a candidate for the office of mayor on the ballot to be used by the Republican Party at the primary election to be held on Sept. 30, 1911. The ground upon which this relief is asked for is in effect that, if elected, the said Earle could not hold the office by reason of being ineligible therefor.

"No precedent has been furnished us for such a proceeding. Neither the Constitution nor the general equity act confers upon the courts of this Commonwealth the power of directing, superintending or controlling the action of the electors in voting for candidates. If we possess any power in the premises, it must be derived from the series of acts constituting the primary election law. A careful examination of these shows that the only jurisdiction in any wise conferred upon the courts is to consider objections to nomination papers when duly filed, and the character of the objections so to be considered by the court is limited to averments that a nomination paper filed was filed by parties not entitled, or that being filed by parties entitled, it has some defects of form which the court may correct.

"It is obvious that these provisions are totally inadequate to enable us to exercise the power invoked.

"The primary election laws were enacted for a definite purpose. They were intended to enlarge the powers of electors in making nominations beyond those which they exercised before. There was no thought of interfering with the freedom of the electors as to the persons whom they were to choose. On the contrary, the object of the act was to give electors greater freedom.

"To hold that in the present state of the law a court of this Commonwealth can abridge the freedom of electors to vote for whom they choose would be a clear usurpation of authority."

Judges Wiltbank and Barratt concurred in the opinion that the court was without jurisdiction to sustain the plaintiff's bill.

The case of Mosby et al. *v.* Armstrong et al., 75 Pitts. L. J. 649, was a prayer for a bill for a preliminary injunction to restrain the county commis-

sioners from printing the name of Robert C. Woodside, one of the defendants, who was a candidate for the Republican nomination of the office of County Comptroller of the County of Allegheny to be balloted for at the primary election succeeding, on the ground that the said candidate was ineligible to hold the office of comptroller, for the reason that two full years had not expired since the term of office of said Woodside as sheriff of said county had expired. The defendants filed an answer raising preliminary objections to the bill, and amongst them was one that the court was without power to determine the right of the said Woodside to be a candidate for the said office of sheriff. The court, amongst other things, said: "We are of the opinion, for the reason hereinafter stated, that the court is without jurisdiction to grant the relief prayed for, and, therefore, we do not discuss the question of eligibility which is raised by the bill, confining ourselves simply to the question of jurisdiction.

"The general Primary Act of July 12, 1913, P. L. 719, presents the law now in force and applicable to this case so clearly that but little more need be done than to quote the appropriate section of that act with the provisions which it contains with regard to attacks upon nomination petitions.

"Section 8 of the act referred to is as follows: 'No nomination petition shall be refused or set aside except for . . .' [Provisions hereinbefore quoted.]

"The above provisions present a plain, definite and exclusive remedy to set aside nomination petitions, as well as defining the only ground on which they may be set aside by the courts. The bill before us is to restrain the printing of the candidate's name upon the ballots, and if the court were to grant the prayer of the bill to that effect, it would simply be setting aside the plain provisions of the act of assembly just quoted, which so clearly intended to provide the only remedy available for one who seeks to prevent the name of the candidate from being presented to the voters at the polls. Consequently, if we were to grant the prayer of these complainants, we would be adding an additional ground and further reason to these specified in the act, which we are clearly without authority to do, where, as here, this remedy is provided by the act of assembly. Consequently, no power remains in the court to grant further relief under the guise of jurisdiction in equity. Complainants have full and adequate remedy at law by which, if they see fit to do so, they may attack the eligibility of a candidate in the usual manner in the event of his election. However, we are not discussing the merits of this case or any other question save that of jurisdiction, which is so clearly with the respondents that we have no doubt as to our duty in the matter."

An appeal to the Supreme Court was taken in this case (290 Pa. 517). A motion was made by both plaintiffs and defendants that the appellate court should take jurisdiction of the case and decide the question of the candidate's eligibility for the office of comptroller as though the proceeding in the court below had been for a declaratory judgment, determining the candidate's legal status in that regard and as though the point of law had been decided in his favor. The court, considering the case as requested, affirmed the decree of the lower court, and in so doing, the Chief Justice, in writing the opinion, among other things, said: "We are far from convinced that the court below erred in dismissing plaintiff's bill without considering the eligibility question."

We have read and considered carefully the cases cited by the plaintiff on the question of jurisdiction and we find none pertinent to this case.

Forgery is an infamous crime, and one convicted thereof under article II, section 7, of the Constitution shall not be eligible to the General Assembly or capable of holding any office of trust or profit in this Commonwealth.

In the case of Com. *v.* Pyle, 18 Pa. 519, relied upon by the plaintiff, the Supreme Court, through Black, C. J., said: "Where . . . a statute declares that certain disqualifications shall render a person ineligible to an office, he must get rid of his disqualification before he is . . . elected. But if the law merely forbids him to hold or enjoy the office, .. . . it is sufficient that he qualifies himself before he is sworn." If, therefore, one has a disqualification which renders him incapable of holding a particular office of trust or profit in this Commonwealth, he has the right, until he is elected or sworn, as the case may be, into the office, to have the disability removed. It may fairly be deduced from this opinion that one being incapable to hold an office at the time of a primary election may be a candidate for the office, and if the removal of the incapacity or disability is procured before election or before he is sworn in, as the case may be, he may hold the office. If that is so, then it would be inequitable for a court of equity to interfere with his candidacy on the ground of his incapacity.

In 22 Ruling Case Law, 402, section 43, relating to the time for qualification, it is said: "The courts do not agree as to the time at which the eligibility or qualification of a person for public office must be determined. The question has arisen most frequently under statutory or constitutional provisions using the word 'eligible' in connection with certain qualifications or disqualifications for public office. One line of authorities holds that the time of election is the proper time to test whether a person is qualified or eligible, and that it is immaterial that a person then disqualified removes the disqualification before actually entering on the duties of the office. For example, a constitutional provision that persons of foreign birth who have not declared their intention to become citizens of the United States are ineligible to any elective office has been construed as disqualifying such persons from being legally elected, so that they cannot hold office even though, after being elected, they declare their intention to become citizens. The reasoning supporting this view is that the electors, in making the choice, should be confined to the selection of such persons only as are not then under any legal disqualification to exercise the powers and duties of the office, so that they can then know that when the choice is made and legally declared, the object for which the election was held has been accomplished, and that there is no legal obstruction in the way to prevent their will from becoming effective. But the weight of authority appears to be that where the word 'eligibility' is used in connection with an office, and there are no explanatory words indicating that such word is used with reference to the time of election, it has reference to the qualification to hold the office, rather than the qualification to be elected to the office."

In the instant case, if the defendant, Frank P. Barnhart, has been convicted within the meaning of the word "convicted" as used in the said article II, section 7, of the Constitution, then he is not capable of holding the office which he seeks, but he may, before election, have the incapacity removed by a pardon, and he then would be qualified, if elected, to hold the office. But should he fail to have the disqualification removed, then the relator and others who wish to join him have an adequate remedy at law to prevent his taking and holding the office.

The plaintiff contends that the defendant, Barnhart, has perpetrated a fraud in the affidavit of his petition, in which he swears that he is eligible to hold the said office. It may be that he is ineligible or the contrary may be the case. The primary election law is purely statutory and makes no provision for the consequences in the case of a false statement in the affidavit. The Governor of the Commonwealth who appointed the said Frank P. Barnhart to

fill a vacancy in the office of judge, and the Attorney-General, who was asked to proceed by *quo warranto* against the said defendant, but refused so to do, obviously thought the defendant to be capable of holding this office; it may be that the defendant and these two high officials are correct in their opinions. On the other hand, it may be an error, but we think that if the defendant in his affidavit to the petition was in error as to his eligibility, it would not be such a fraud upon the Commonwealth or any one else that under the power given to courts of equity in matters of fraud it would empower the court to take hold of this matter. Its power with respect to primary elections being, as has been frequently said, purely statutory.

With respect to the other request, that a decree be entered declaring that the said Frank P. Barnhart is ineligible, incapable and disqualified to hold said office of judge, in view of what we have hereinbefore said, we deem it beyond our province, in this case, to pass upon the question of eligibility. But however that may be, if we were to balance the equities in this case, they are all with the defendant, Barnhart. The people of the county will have lost no right, because his rights to hold office can be tested subsequent to the election, but if he is deprived of having his name on the ballot and the people deprived of voting for him, and it should subsequently be determined that he was eligible, a very serious injury would be done both to him and the people of the judicial district which could not thereafter be remedied.

Wherefore, we are of the opinion that the nomination petition in question can be set aside only for any of the reasons enumerated in section 8 of the Primary Act of 1913; that capacity to hold office such as the one in question is not a prerequisite to nomination, the Legislature not having specified this requirement in the statute regulating nominations, and that there is no general equity jurisdiction to prevent the filing of the petition of an ineligible person seeking a nomination for such office as the one in question.

And now, Aug. 31, 1929, upon due consideration, it is hereby ordered, adjudged and decreed that the preliminary objections to the bill, excepting No. 1, are sustained, the rule is discharged and the bill is dismissed, at the cost of the plaintiff.

From Homer L. Kreider, Harrisburg, Pa.